IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| **GULF COAST SHIPYARD GROUP, INC.** § | | **PLAINTIFF** |
| § | | |
| § | | |
| **VERSUS** § | | **Civil No. 1:14cv318-HSO-JCG** |
| § | | |
| § | | |
| **CRESCENT COATINGS &** § | | **DEFENDANT** |
| **SERVICES, INC.** § | | |

**MEMORANDUM OPINION AND ORDER
DENYING WITHOUT PREJUDICE
DEFENDANT CRESCENT COATINGS AND SERVICES, INC.'S
MOTION IN LIMINE FOR ADVERSE INFERENCE**

BEFORE THE COURT is the Motion in Limine for Adverse Inference [52] filed by Defendant Crescent Coatings & Services, Inc. ("Defendant") on June 18, 2015. This Motion has been fully briefed. After due consideration of the record, relevant legal authorities, and the parties' submissions, and for the reasons stated herein, the Court finds that Defendant's Motion in Limine [52] should be denied without prejudice.

I. BACKGROUND

Plaintiff Gulf Coast Shipyard Group, Inc., brought the instant civil action to recover damages sustained when electrical panels located in the control room of a vessel under construction at Plaintiff's shipyard were damaged. Plaintiff alleges that on the weekend of October 12–13, 2013, while Defendant's employees were sandblasting in the ballast tank area onboard the HARVEY ENERGY, Defendant "allowed sand and other sandblasting residue from its operations to come into

contact with and contaminate certain electrical equipment onboard the vessel." *Id.* Plaintiff filed suit on August 19, 2014, advancing claims for negligence and breach of contract, and claiming damages exceeding $350,000.00, plus interest, costs, and attorneys' fees. This matter is currently set for a bench trial in October 2015.

Defendant moved for summary judgment [37] on April 7, 2015, arguing that the report of its retained expert, analytical chemist Dr. David Engel, established that Defendant's sand was not found among the contaminants sampled from the electrical panels, and thus, Defendant could not have caused the damage to the electrical equipment. *See* Def.'s Mot. Summ. J. [37]. Plaintiff also took samples around the same time as Defendant, but is "not choosing to test [those] samples" because it asserts that "the eye-witness evidence has shown [the samples] did not need to be tested." Pl.'s Resp. [54], at 1. On June 12, 2015, in denying Defendant's motion for summary judgment, the Court noted that among the genuine issues of material fact remaining in dispute was the concern raised by Plaintiff "about the reliability of the samples provided to Defendant's expert." Order [51], at 5.

On June 18, 2015, Defendant filed the instant Motion in Limine [52], addressing the reliability of its samples and Plaintiff's decision not to submit a similar chemical analysis of the samples it collected. In this Motion, Defendant seeks two adverse inferences on the issue of causation:

> First, because Gulf Coast admits it took no action to preserve the condition of the electrical panels, it cannot challenge the analysis of the samples secured and later tested by Crescent.

-2-

> Second, because Gulf Coast secured its own samples but chose not to test them—not even after confronted with the report of Crescent's expert—Crescent is entitled to an adverse inference that any test *of Gulf Coast's* samples would have shown that Crescent's sand did not cause the contamination that Gulf Coast complains of.

Mot. in Limine [52], at 1–2 (emphasis in original).

> Plaintiff makes four arguments in response to Defendant's Motion:
>
> (1) Defendant "had daily access to the . . . damaged equipment and could have obtained samples at any time," thus any delay in securing samples is not Plaintiff's fault;
> (2) Defendant cannot establish the bad faith element to support a claim of spoilation;
> (3) Plaintiff is under "no obligation to hire an expert or conduct testing to prove its case or avoid an adverse inference;" and
> (4) Defendant's motion amounts to an untimely motion to compel production of Plaintiff's samples.

Pl.'s Resp. [54], at 2.

In Reply, Defendant argues that it took samples when the panels were first made available for inspection and any deterioration in the quality of the samples in the meantime was due to Plaintiff's decision to not take action to preserve the condition of the panels.  Def.'s Reply [55], at 1.

## II.  DISCUSSION

A.  Legal Standard

A party is entitled to an adverse inference if it can show that "(1) the party with control over the evidence had a duty to preserve it at the time it was destroyed; (2) the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense; and (3) the evidence was destroyed in bad faith." *Dixon v. Greyhound*

*Lines, Inc.*, No. CIV. A. 13-179-JWD, 2014 WL 6087226, at *2 (M.D. La. Nov. 13, 2014). Within the Fifth Circuit, "an adverse inference may not be imposed unless there is evidence of bad faith." *Crompton Greaves, Ltd. v. Shippers Stevedoring Co.*, 921 F. Supp. 2d 697, 720 (S.D. Tex. 2013). A party seeking an adverse inference has the burden of establishing that bad faith led to the destruction of evidence, and "[m]ere negligence is not enough . . . ." *Vick v. Texas Emp't Comm'n*, 514 F.2d 734, 737 (5th Cir. 1975). "An adverse inference based on the destruction of potential evidence is [thus] predicated on the 'bad conduct' of the spoliator." *King v. Illinois Cent. R.R.*, 337 F.3d 550, 556 (5th Cir. 2003). If evidence is destroyed or disposed of for benign or innocuous reasons in the ordinary course of business, bad faith is lacking, and an adverse inference is unwarranted. *See id*.

B.  Analysis

The record at this stage of the case does not provide a sufficient basis for an adverse inference. Defendant has not carried its burden to establish Plaintiff's bad faith. Plaintiff has submitted evidence that Defendant was informed of the damage to the electrical equipment by email on the morning of October 14, 2013. Pl.'s Resp., Ex. 1, Email Chain [54-1]. Defendant was then granted access to the site of the contamination. Pl.'s Resp., Ex. 3, Decl. of Christopher Fallon [54-3]. Plaintiff did not destroy the panels after they were removed from the ship, and it did not "take no action to preserve the condition of the electrical panels" as Defendant suggests. Mot. in Limine [52], at 1–2. Plaintiff placed the panels in a warehouse ashore and later made them available to Defendant for sampling. Pl.'s Resp., Ex. 2,

Decl. of Christopher Fallon [54-2].  As Defendant points out, "Plaintiff also secured samples in the same time frame as Crescent."  Def.'s Reply [55], at 1.  These actions are inconsistent with the desire to destroy or otherwise eliminate evidence.  Defendant has not shown that the delay in securing the samples or the conditions under which the panels were stored were the result of bad faith or a deliberate attempt by Plaintiff to destroy evidence.

That Plaintiff chose not to test its own samples also does not give rise to an inference of bad faith based on the record before the Court.  Defendant analogizes this situation to the "uncalled-witness rule" to support its argument that Gulf Coast's "refusal to produce [its] samples or an analysis of the same" entitles it to an adverse inference.  Def.'s Reply [55], at 4–5.  In the case Defendant cites for this proposition, however, the Fifth Circuit "conclude[d] that the uncalled-witness rule has no place in federal trials conducted under the Federal Rules of Evidence and the Federal Rules of Civil Procedure," calling the rule an "archaism" in light of the evidentiary scheme created by the Federal Rules of Evidence and as complemented by the Federal Rules of Civil Procedure.  *Herbert v. Wal-Mart Stores, Inc.*, 911 F.2d 1044, 1047–48 (5th Cir. 1990).

Defendant has chosen to pursue a litigation strategy centered on the scientific findings of its expert report, while Plaintiff has chosen to pursue a different litigation strategy based on eye-witness testimony.  While Plaintiff's decision not to test its own samples may become relevant to whether it can sustain its burden of proof at trial, particularly when confronted with the testimony of

-5-

Defendant's expert, the decision to take this approach does not, in the Court's view, support a finding of bad faith on Plaintiff's part based on the evidence in the current record.  Out of an abundance of caution, however, the Court finds that Defendant's Motion [52] should be denied without prejudice in the event that, on a more fully developed record at trial, the Court concludes that such an inference could be warranted.

### III.  CONCLUSION

For the foregoing reasons,

**IT IS, THEREFORE, ORDERED AND ADJUDGED**, that Defendant Crescent Coatings & Services, Inc.'s  Motion in Limine for Adverse Inference [52] is **DENIED WITHOUT PREJUDICE**.

**SO ORDERED AND ADJUDGED**, this the 21st day of July, 2015.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE